1999 ND 247

**APACHE CORPORATION** and **Snyder Oil Corporation, now named Santa Fe Snyder Corporation, Plaintiffs and Appellants,**

v.

**MDU RESOURCES GROUP, INC.** (formerly known as Montana–Dakota Utilities Company), and Williston Basin Interstate Pipeline Company, Inc., Defendants and Appellees.**

No. 990143.

Supreme Court of North Dakota.

Dec. 28, 1999.

Fred C. Rathert, Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L., Williston, N.D., for plaintiffs and appellants.

Daniel S. Kuntz, Zuger Kirmis & Smith, Bismarck, N.D., for defendants and appellees. Appearance by James S. Hill.

Albert J. Hardy, Dickinson, N.D., for amicus curiae.

KAPSNER, Justice.

[¶ 1] Apache Corporation and Snyder Oil Corporation appealed a judgment dismissing their action against MDU Resources Group, Inc., and Williston Basin Interstate Pipeline Company, Inc. We conclude Apache Corporation and Snyder Oil Corporation did not show they were third-party beneficiaries of other parties' contracts or show unjust enrichment, and we affirm.

[¶ 2] Montana–Dakota Utilities Company (known as MDU Resources Group, Inc., since January 1, 1985, "MDU") transports, distributes, and sells natural gas. Koch Hydrocarbon Company ("Koch") buys and processes natural gas. Apache Corporation and Snyder Oil Corporation are natural gas producers who sold gas to Koch, which processed it and sold it to MDU. Producer contracts with Koch did not have a fixed price for the gas. Producers received a price based, in part, on a percentage of the proceeds received by Koch when Koch sold the gas.

[¶ 3] On December 20, 1979, when natural gas was in short supply, MDU and Koch signed a ten-year contract ("the McKenzie contract") in which MDU agreed to buy and Koch agreed to sell up to 25,000 (later changed to 50,000) Mcf of residue gas per day at "the highest price permitted" by the Natural Gas Policy Act of 1978 ("NGPA"). The contract did not

require Koch to deliver any minimum quantity to MDU and allowed Koch to terminate the contract at any time upon 180 days notice to MDU. Koch and MDU later made a similar agreement for gas produced in another field.

[¶ 4] At first, MDU bought all the gas Koch tendered. However, a surplus of gas developed, and, on February 1, 1983, MDU reduced the volume of its gas purchases, buying less than Koch had available. Gas not bought by MDU was sold to others or placed in storage for later sale.

[¶ 5] MDU paid the maximum lawful price permitted by the NGPA through 1984. On January 1, 1985, the prices for certain categories of natural gas were deregulated and a dispute arose between Koch and MDU over the proper price under their contracts. That same day, MDU assigned its gas purchase contracts to Williston–Basin Interstate Pipeline Company ("WBI"), a subsidiary of MDU Resources Group, Inc. After January 1, 1985, WBI paid for gas purchased in accordance with its contractual interpretation that deregulated gas was to be priced at a reasonable market price. Koch contended the last regulated price, which was higher, continued as the applicable contract price. Koch and MDU reached a partial settlement of their dispute on May 27, 1986.

[¶ 6] In January 1987, Koch sued MDU and WBI in federal court for breach of contract. On May 6, 1987, WBI notified Koch that, effective May 1, 1987, it would no longer purchase gas from Koch under the contracts unless Koch agreed to an amendment. The federal district court held MDU had breached its contract with Koch, but reduced Koch's damage claim by 75%, finding that, for the most part, Koch's contracts with the producers were percentage-of-proceeds contracts, with the split averaging 25% to Koch and 75% to the producers. Koch argued on appeal that the damage award should not have been reduced by 75%. The United States Court of Appeals for the Eighth Circuit affirmed the percentage-of-proceeds reduction in damages, reasoning the producers had not intervened and Koch should be allowed to collect only the damages it sustained. The case was remanded to district court for a determination of damages. *Koch Hydrocarbon Co. v. MDU Resources Group, Inc.*, 988 F.2d 1529 (8th Cir.1993). Koch and MDU then settled.

[¶ 7] Apache Corporation and Snyder Oil Corporation (collectively referred to as "Apache") sued MDU and WBI (collectively referred to as "MDU") in December 1993, to recover the money MDU did not pay Koch after breaching its contracts with Koch, alleging Apache was a third-party beneficiary of the contracts between MDU and Koch, MDU was unjustly enriched by its repudiation or default of the MDU contracts with Koch, and MDU holds the damages due Apache in an implied trust.

[¶ 8] The district court ruled N.D.C.C. § 41–02–104, rather than N.D.C.C. § 28–01–16, is the statute of limitations applicable to Apache's claims; Apache was not an intended third-party beneficiary of MDU's contracts with Koch; MDU was not unjustly enriched; and there was no evidence establishing a constructive trust. The court ordered dismissal of all of Apache's claims. Judgment was entered accordingly, and Apache appealed.[1]

---

1. BTA Oil Producers, Cenex Harvest States Cooperatives, Conoco Inc., Exxon Corporation, Sinclair Oil Corporation, Sun Operating Limited Partnership, and Tipperary Oil & Gas Corporation moved under N.D.R.App.P. 29 for leave to participate in this appeal by filing an amicus curiae brief and participating in oral argument. Leave was granted to file an amicus curiae brief. MDU brought a motion to strike portions of the amicus curiae brief asserting it raised new issues. We deferred ruling on MDU's motion until after oral argument, noting that should the Court decide to consider issues not raised by Appellants or Appellees, the Court would permit supplemental briefing by the parties on those issues. We consider the amicus curiae brief only to the extent it presents argument on issues raised by Apache. *See* 20A *Moore's Federal Practice* § 329.11 (3d ed.1999) and 4 Am.

## I

[¶ 9] Apache contends the trial court erred in concluding Apache was not a third-party beneficiary of MDU's contracts with Koch.

[¶ 10] Apache can enforce the MDU–Koch contracts "as a third-party beneficiary if it falls within the ambit of Section 9–02–04, N.D.C.C., which provides: 'A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it.'" *First Fed. Sav. & Loan Ass'n v. Compass Invs., Inc.*, 342 N.W.2d 214, 218 (N.D.1983). To enforce a contract between two others, a third party must have been intended by the contracting parties to be benefited by the contract. *Id.* Merely because a third party may derive a benefit, purely incidental and not contemplated by the contracting parties, from the performance of a contract does not entitle him to sue to enforce the contract. *Id.See also Hellman v. Thiele*, 413 N.W.2d 321, 325 (N.D.1987) (Under N.D.C.C. § 9–02–04, "a party only incidentally benefited by performance of a contract is not entitled to maintain an action to enforce it."); *Johnson v. Clark*, 77 N.D. 14, 39 N.W.2d 431, 432 (1949) ("The mere fact that one not a party to a contract may be benefited by its performance is not sufficient to enable him to maintain an action for its breach.").

[¶ 11] The trial court found: 1) "Both MDU and Koch entered into their gas purchase contracts to further their own business purposes"; 2) "MDU did not know who owned the casinghead gas acquired by Koch"; 3) "Neither Koch nor MDU generally disclosed the terms of their contracts to Koch's suppliers"; 4) "Parties to a natural gas sales contract customarily did not intend to create third party beneficiaries to their contract even

when the seller acquired the gas from producers under a percentage of proceeds contract"; and 5) "Koch controlled the price and payment arrangements with its suppliers under contracts that were separate and independent from the McKenzie Contract." As the trial court recognized, the McKenzie contract did not mention Apache,[2] did not require Koch to deliver any minimum quantity of gas to MDU, and provided "Koch had the unilateral right to terminate the McKenzie Contract. if it deemed the operation of its processing facility and gathering system uneconomic." The evidence does not show MDU and Koch contracted "expressly for the benefit of" Apache, *see* N.D.C.C. § 9–02–04, and we conclude the trial court did not err in concluding Apache was not a third-party beneficiary of MDU's contracts with Koch.

## II

[¶ 12] Apache contends the trial court erred in concluding Apache did not prove its unjust enrichment claim against MDU.

[¶ 13] "Unjust enrichment is an equitable doctrine, applied in the absence of an express or implied contract, to prevent a person from being unjustly enriched at the expense of another." *Zuger v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 135, 138 (N.D.1992).

A determination of unjust enrichment is a conclusion of law, *Matter of Estate of Zent*, 459 N.W.2d 795, 798 (N.D.1990), and is fully reviewable by this court, *Opp v. Matzke*, 1997 ND 32, ¶ 8, 559 N.W.2d 837. There are five elements necessary to proving unjust enrichment: "1. An enrichment; 2. An impoverishment; 3. A connection between the enrichment and the impoverishment; 4. Absence of a justification for the enrich-

---

Jur.2d *Amicus Curiae* § 7 (2d ed.1995), which recognize an amicus curiae ordinarily cannot raise issues not presented by the parties.

**2.** We have held, however, even "the mention of one's name in an agreement does not give

rise to a right to sue for enforcement of the agreement where that person is only incidentally benefited." *First Fed. Sav. & Loan Ass'n v. Compass Invs., Inc.*, 342 N.W.2d 214, 218 (N.D.1983).

ment and impoverishment; and 5. An absence of a remedy provided by law." *Opp v. Matzke,* ¶ 8, *quoting A & A Metal Bldgs. v. I–S, Inc.,* 274 N.W.2d 183, 189 (N.D.1978). A determination of unjust enrichment "holds that a certain state of facts is contrary to equity." *Zent,* 459 N.W.2d at 798.

*Albrecht v. Walter,* 1997 ND 238, ¶ 23, 572 N.W.2d 809.

[¶ 14] The doctrine of unjust enrichment "is invoked 'when a person has and retains money or benefits which in justice and equity belong to another.'" *Midland Diesel Svc. & Engine Co. v. Sivertson,* 307 N.W.2d 555, 557 (N.D.1981) (quoting *Schlichenmayer v. Luithle,* 221 N.W.2d 77, 83 (N.D.1974)). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Restatement of Restitution* § 1. For a complainant to recover, it is sufficient if another "has, without justification, obtained a benefit at the direct expense of the [complainant], who then has no legal means of retrieving it." *Sivertson,* 307 N.W.2d at 557. "The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value." *Zuger v. North Dakota Ins. Guar. Ass'n,* 494 N.W.2d 135, 138 (N.D.1992).

> Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.

Comment *c., Restatement of Restitution* § 1. "[A]ll of us benefit constantly from efforts of others." Dan B. Dobbs, *Law of Remedies* § 4.1(2), p. 374 (2d ed.1993).

> In more complicated transactions involving three parties, *A* may contract with *B* but not with *C,* although the three are involved in a single project. The parties *could* have contracted each with both others, but they did not. The separate

contracts convey clearly the limited kinds of liability and exposure each party has in mind. Each party may benefit by the work or payments of both other parties, but the parties understand that their responsibilities and rights are only those set up by the contract. Respect for that contract arrangement requires the courts to refuse restitution between the parties who did not contract with each other.

Dobbs, § 4.9(4) at p. 482.

[¶ 15] Apache benefited when MDU performed MDU's contract with Koch. Although MDU saved money by breaching its contract with Koch, and Apache received less money from Koch when MDU breached its contract with Koch, MDU contracted with Koch and not with Apache. The money MDU saved by breaching its contract with Koch was not a "benefit at the direct expense of" Apache. *Sivertson,* 307 N.W.2d at 557. Apache's reduced income resulted from its use of a percentage of proceeds as a pricing factor in its agreements with Koch, which contemplated increases or decreases in gas prices. Where the impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity. *Albrecht,* 1997 ND 238, ¶ 23, 572 N.W.2d 809. Thus, we are unpersuaded the essential element of recovering under a theory of unjust enrichment—"receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value"—is present here. *Zuger,* 494 N.W.2d at 138. We conclude the trial court did not err in concluding Apache did not prove its unjust enrichment claim against MDU.

### III

[¶ 16] We have determined the trial court did not err in concluding Apache was not a third-party beneficiary entitled to enforce MDU's contract with Koch, and did not err in concluding Apache failed to

prove its unjust enrichment claim against MDU. We also conclude the trial court correctly determined there was no evidence to establish a constructive trust. Because of those conclusions, we need not address the statute of limitations issues raised by Apache. We need not address questions, the answers to which are unnecessary to the determination of an appeal. *State v. Evans*, 1999 ND 70, ¶ 17, 593 N.W.2d 336.

### IV

[¶ 17] The judgment is affirmed.

[¶ 18] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., GORDON O. HOBERG, S.J., concur.

[¶ 19] GORDON O. HOBERG, S.J., sitting in place of GERALD W. VANDE WALLE, C.J., disqualified.