2015 ND 183

**Thane DOCKTER and Nicole Dockter, Appellants**

v.

**BURLEIGH COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee.**

No. 20140379.

Supreme Court of North Dakota.

July 2, 2015.

Micheal A. Mulloy (argued), Bismarck, N.D., and David R. Bliss (appeared), Bismarck, N.D., for appellants.

Scott K. Porsborg, Special Assistant State's Attorney, Bismarck, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Thane and Nicole Dockter appealed from a judgment affirming a Burleigh County Board of County Commissioners' decision to rezone a 311 acre tract of land in Menoken Township from agricultural to industrial use. We conclude the County Commissioners' decision does not constitute impermissible spot zoning, and the decision is not arbitrary, capricious, or unreasonable and is supported by substantial evidence. We affirm.

I

[¶ 2] In 1971, the Menoken Board of Township Supervisors adopted a resolution under N.D.C.C. § 11–33–20 relinquishing its zoning power over land in the township to the Burleigh County Board of County Commissioners. In 1980, the County Commissioners adopted a comprehensive land use plan under N.D.C.C. ch. 11–33 for

land within its jurisdiction in Burleigh County, including Menoken Township.

[¶ 3] In March 2013, Dale Pahlke applied to the Bismarck–Burleigh County Planning and Development Department to rezone 311 acres of his land in Menoken Township from agricultural use to light industrial use. Pahlke's application proposed to subdivide his land into five to ten acre lots if his rezoning request was granted. Pahlke's land is located on the north side of Interstate 94 and on the west side of 145th Street NE, about 1 mile west of the Menoken interchange and just north of an interstate rest area. Except for the interstate corridor, the land is surrounded by property zoned for agricultural use. In 2009, the Dockters purchased land directly north of Pahlke's land, and they operate a certified organic farm on their land. The Dockters opposed Pahlke's application, claiming industrial use of the adjacent land could contaminate their fields and result in loss of certification of their organic farm.

[¶ 4] Before an April 2013 meeting of the Burleigh County Planning Commission, the Planning Commission's staff prepared a report recommending denial of Pahlke's application:

1. The proposed zoning change is outside the area covered by the Bismarck–Mandan Regional Future Land Use Plan.

2. The proposed zoning change is not compatible with adjacent land uses. Adjacent land uses include agriculture and related agriculture uses to the north, south, east and west.

3. Although the proposed zoning change is located along Interstate 94, the proposed zoning change may place an undue burden on public facilities or services. In particular, access to and from the property would be obtained one mile east, at the interchange in Menoken.

4. The proposed zoning change may adversely affect property in the vicinity. In particular, the proposed industrial land use may have an adverse impact on the surrounding agriculture-related uses.

5. The proposed zoning change is not consistent with the master plan, other adopted plans, policies and accepted planning practice. In particular, locating a 310 acre industrial site with access approximately one mile east of the interchange at Menoken and in an area surrounded by agriculturally zoned property and agriculture-related land uses is contrary to accepted planning practices and policies of the Burleigh County Comprehensive Land Use Plan.

[¶ 5] At the April 2013 meeting, the Planning Commission voted to hold a public hearing on Pahlke's application. At further public hearings, the Planning Commission heard comments from Thane Dockter and other community members against the application and from Pahlke about the need for large tracts of industrial property in Burleigh County. The Planning Commission ultimately recommended approving the application for the zoning change, subject to the following conditions:

1. That the County Commission develop stipulations to address the concerns raised by the Planning Commission and the property owners within Menoken Township, including the impact on the adjacent organic farm, noise control, screening, and the potential archeological significance of the site due to its proximity to the Menoken Village State Historic Site; and

2. The County Commission develops a list of acceptable uses for the site.

In recommending approval of the zoning change, the Planning Commission also made written findings:

1. Burleigh County is in need of large blocks of industrial-zoned property in order to promote reasonable economic growth. While there are a total of 1,065 acres of total industrial-zoned property available in Burleigh County, most of those acres are in smaller tracts located within the city of Bismarck, and more than one mile from an interstate interchange.

2. The property is located adjacent to I–94, and is less than one mile west by frontage road to the Menoken interchange.

3. A large electrical transmission line bisects the property, making the property undesirable for residential or commercial use, which militates in favor of industrial use.

4. Menoken Township has industrial zoned property off the Menoken exit; all of the 64 acres of available industrial-zoned property located within Burleigh County's zoning jurisdiction are located in Menoken Township.

5. The concerns of surrounding landowners with regard to traffic, noise, pollution, etc. will still be addressed in the subdivision and platting process, and additional public input on what specific restrictions and stipulations will be required of the developer will be considered in that process.

6. Although this property has never been evaluated for suitable land use, the zoning change is not inconsistent with Burleigh County's Comprehensive Plan, which was adopted in 1980, for the following reasons:

   a. Section 5.02 (Manufacturing and Industry) Policy A, states that the overriding purpose of the policy is to "[p]romote the quality growth of manufacturing and industrial uses." The Commission heard evidence of a need for large industrial parcels in the metropolitan area. Neighboring landowners seldom want industrial property near their own; however, it is the policy and charge of the Commission to determine whether areas are appropriate and conducive to industrial zoning. In the opinion of the Commission, this parcel fits that criteria for the reasons discussed above.

   b. Section 5.02 (Manufacturing and Industry) Policy A, Program 2 states: "[m]anufacturing and industrial uses should be located convenient to transportation facilities." The property in question is adjacent to I–94 and within one mile of the Menoken interchange. As part of the subdivision/platting process, the developer may be required to improve the frontage road to whatever specifications are deemed necessary to serve the development.

[¶ 6] At an August 5, 2013 meeting, the Burleigh County Board of County Commissioners initially rejected the Planning Commission's recommendation by a vote of three to two and denied Pahlke's application to rezone his land. On August 21, 2013, the County Commissioners voted to reconsider the application after one commissioner indicated he had additional questions regarding adequate emergency access to the land, which was the basis for his prior vote to deny the application. After a further public hearing and input on September 4, 2013, the County Commissioners adopted the Planning Commission's recommendation to rezone the land for industrial use, subject to eight conditions:

1. That a Class III cultural resource survey be conducted and the results

be reviewed and approved by the North Dakota State Historical Society;

2. That the property be platted, with the layout and size of lots at the developer's discretion following existing County ordinances;

3. That the developer provide an approved Storm Water Management Plan;

4. That an approved site plan be required to ensure all screening requirements are met;

5. That the rezoned property have an approved roadway master plan;

6. That the rezoned property be required to have access for emergency vehicles from two different public highways, like all other new subdivisions;

7. That the developer be required to follow the County Gravel Road Improvement Policy, including the reconstruction (if necessary) and paving of at least one roadway that connects to the existing paved highway system;

8. That the developer comply with any other condition deemed relevant by the County Commission and that no building permits or industrial activity will be allowed on the property until a formal subdivision is approved.

In approving the application, the County Commissioners also adopted and incorporated the Planning Commission's findings and made one additional finding:

1. That the owner of the property has requested access from the Federal Highway Administration through the I–94 rest area located immediately to the south of the subject property, and that the Burleigh County Sheriff and Rural Fire Chief do not have any objection to locked gate access of that type.

[¶ 7] The district court affirmed the County Commissioners' decision and denied the Dockters' request for attorney fees and costs under N.D.C.C. § 11–11–39. The court ruled the Dockters had not established the County Commissioners' decision was arbitrary, capricious, or unreasonable and was not supported by substantial evidence. The court also ruled the County Commissioners' decision did not constitute impermissible spot zoning.

II

[¶ 8] A board of county commissioners' zoning decision is a legislative function subject to limited review by a court. *Pulkrabek v. Morton Cnty.*, 389 N.W.2d 609, 612–14 (N.D.1986); *Shaw v. Burleigh Cnty.*, 286 N.W.2d 792, 796–97 (N.D.1979). In appeals from a zoning decision by a board of county commissioners, the "principle of separation of powers precludes parties from relitigating the correctness and propriety of the county commission's decision and prevents a reviewing court from sitting as a super board and redeciding issues that were decided in the first instance by the county commission." *Hagerott v. Morton Cnty. Bd. of Comm'rs*, 2010 ND 32, ¶ 7, 778 N.W.2d 813. Our standard of review of a board of county commissioners' zoning decision is deferential:

When considering an appeal from the decision of a local governing body under N.D.C.C. § 28–34–01, our scope of review is the same as the district court's and is very limited. This Court's function is to independently determine the propriety of the [Commission's] decision without giving special deference to the district court decision. The [Commission's] decision must be affirmed unless the local body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the deci-

sion. A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation. *Hagerott*, at ¶ 7 (citations omitted). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Dahm v. Stark Cnty. Bd. of Cnty. Comm'rs*, 2013 ND 241, ¶ 10, 841 N.W.2d 416 (quoting *Hanson v. Indus. Comm'n*, 466 N.W.2d 587, 590 (N.D.1991)). "On appeal from a decision of a county commission, a reconsideration of evidence is limited to the extent that such evidence was presented to the county commission, and the evidence must be reviewed in light of the commission's decision to determine whether that decision was arbitrary, capricious, or unreasonable." *Pulkrabek*, at 613. Our "standard of review ensures that the court does not substitute its judgment for that of the local governing body which initially made the decision." *Hector v. City of Fargo*, 2009 ND 14, ¶ 9, 760 N.W.2d 108.

### III

■ [¶ 9] The Dockters argue the County Commissioners' decision to rezone the land constitutes impermissible spot zoning. They claim spot zoning cannot be used to favor one landowner or to offer special privileges not enjoyed by neighboring property. They argue characteristics of spot zoning were established in this case, because the rezoned industrial land is different from prevailing agricultural uses in the area, the rezoned land constitutes a small geographical area compared to the surrounding 22,241 acres of land zoned for agricultural use in Menoken Township, the rezoned land benefits one owner and not the greater community, and the rezoned use is inconsistent with Burleigh County's comprehensive land use plan.

[¶ 10] This Court has said spot zoning occurs when an individual lot is singled out for discriminatory or different treatment than that accorded surrounding property of a similar character and is beyond the authority of a zoning entity, absent a clear showing of a reasonable basis for different treatment. *Gullickson v. Stark Cnty. Bd. of Cnty. Comm'rs*, 474 N.W.2d 890, 894 (N.D.1991). In *Bigwood v. City of Wahpeton*, 1997 ND 124, ¶ 21, 565 N.W.2d 498, this Court said characteristics of "spot zoning" include:

1) The use is different from the prevailing use of the area; 2) the area rezoned is small, and; 3) the classification benefits a particular landowner. 8 McQuillin, § 25.83 at 307 (J. Jeffery Reinholtz and Timothy P. Burr, eds.1991). A relevant inquiry is whether the ordinance is solely for the benefit of a landowner or "whether it is pursuant to a comprehensive plan for the general welfare of the community." *Id.* § 25.84 at 320.

[¶ 11] In *Gullickson*, 474 N.W.2d at 891, the Stark County Commissioners granted property owners a variance to put a mobile home on their lot in a subdivision which prohibited mobile homes after a permit had been erroneously issued for their mobile home and the property owners had moved the mobile home onto the lot. This Court said the mobile home was a prohibited use in the subdivision and an applicable ordinance said prohibited uses shall not be allowed by variance. *Id.* at 894. This Court concluded the granting of the unauthorized variance was arbitrary, capricious, and unreasonable and explained the unauthorized variance contrary to the express directions of the applicable zoning ordinance was unreasonable spot zoning. *Id.* We said an unjustified variance "can undermine the essential purpose of zoning

... to rationally coordinate land use planning to promote orderly development and preservation of property values." *Id.* at 894–95 (quoting *City of Fargo v. Harwood Twp.*, 256 N.W.2d 694, 697 (N.D.1977)). We rejected the Stark County Commissioners' argument for virtually unlimited authority to grant a variance and held a spot variance in conflict with the relevant zoning ordinance was arbitrary, capricious, and unreasonable:

> The Commissioners rely upon section 9.06(4) of the Stark County Zoning Ordinance which says that "The Board may vary, modify, or waive any restriction of their ordinance provided that the public safety and welfare is secured." The statute that authorizes county zoning ordinances requires that they "shall be made in accordance with a comprehensive plan...." NDCC 11–33–03. "The comprehensive plan shall be a statement in documented text setting forth explicit goals, objectives, policies, and standards of the jurisdiction to guide public and private development within its control." *Id. See also* NDCC 11–33–11. The Commissioners did not amend or revise the policies and standards in their zoning ordinance that regulate variances. 82 Am. Jur. 2d, *Zoning and Planning* §§ 267–269. Neither the relevant statutes nor the applicable ordinance authorize isolated and standardless changes of use or structure classifications by variance.

> Legislative decisions pursuant to county zoning ordinances are "subject ... to appellate review to determine whether or not the county's legislative body acted arbitrarily, capriciously, or unreasonably in reaching its decision." *Shaw v. Burleigh County*, 286 N.W.2d at 797. *See also Yokley's Law of Subdivisions* § 70(g) (2nd ed.1981). A spot variance that is in conflict with the relevant

standards of the zoning ordinance is arbitrary, capricious, or unreasonable.

*Gullickson*, at 895.

[¶ 12] In *Bigwood*, 1997 ND 124, ¶¶ 2–4, 21–23, 565 N.W.2d 498, owners of industrial property in an industrial park subdivision zoned for industrial and business use claimed the City of Wahpeton's action in rezoning four lots in the industrial park to residential, multi-family use constituted spot zoning. This Court held the rezoning plan for proposed apartments in the industrial park was not spot zoning, explaining:

> the benefit was not solely for the developer, because the apartments provided low income housing, a recognized need in the Wahpeton–Breckenridge area. Significantly, there is property within the industrial park which already contains multi-family apartments permitted by rezoning in 1994. The proposed apartments at issue here are similar in nature to already-existing structures within the subdivision. Moreover, the rezoning plan is not a variance for a single lot, as in *Gullickson*, but rather a change involving several contiguous lots in the subdivision. The rezoning plan at issue is not spot zoning.

*Id.* at ¶ 22.

[¶ 13] This case is more akin to *Bigwood*. Although Pahlke may individually benefit from the zoning change, there was evidence the County Commissioners' decision benefited Burleigh County as a whole. According to Brian Ritter, the director of business development for the Bismarck–Mandan Development Association, Burleigh County needed large blocks of property for affordable industrial development and the size of this parcel and its proximity to the interstate could help satisfy that need and bolster economic development. The record supports economic benefits to the community as a whole for the general welfare of the community, which is a char-

acteristic that militates against a claim of impermissible spot zoning. Moreover, this tract of land consists of 311 acres, which was proposed to be divided into five to ten acre lots if the zoning application was approved, which also militates against a claim that the rezoning change involves an individual lot singled out for discrimination, or different treatment. *Compare Gullickson,* 474 N.W.2d at 894–95 (rejecting variance for single lot as impermissible spot variance) *with Bigwood,* 1997 ND 124, ¶ 22, 565 N.W.2d 498 (holding rezoning four lots was not spot zoning). We conclude this record supports a reasonable basis for the County Commissioners' decision and does not establish the Commissioners' decision constitutes impermissible spot zoning.

## IV

[¶ 14] The Dockters argue the County Commissioners' decision was arbitrary, capricious, and unreasonable, because it was inconsistent with a comprehensive Burleigh County land use plan and contrary to the substantial weight of the evidence. The County Commissioners respond there was substantial evidence Burleigh County needed additional affordable large tracts of land zoned for industrial use and this rezoning application promoted economic growth. The County Commissioners argue the decision follows Burleigh County's comprehensive land use plan, demonstrates a rational mental process, and is not arbitrary, capricious, or unreasonable.

[¶ 15] Section 11–33–01, N.D.C.C., authorizes county commissioners to regulate the use of lands within a county. Under N.D.C.C. § 11–33–03, regulations shall be in accordance with a comprehensive plan, with reasonable consideration to the character of a district and its suitability for particular uses. The comprehensive plan

shall be a statement in documented text setting forth explicit goals, objectives, policies, and standards to guide public and private development. *Id.*

[¶ 16] The Burleigh County comprehensive land use plan identifies a goal of "promot[ing] the quality growth of manufacturing and industrial uses" and includes precatory language to "encourage industry to locate in planned manufacturing and industrial parks" which "should be located convenient to transportation facilities." It is obvious that to meet those goals some land needs to be rezoned to industrial uses. When read as a whole, the comprehensive plan serves to guide the County Commissioners in their exercise of discretion in adopting zoning ordinances.

[¶ 17] Here, the County Commissioners found rezoning would be consistent with the comprehensive plan because the rezoning application promoted quality growth of manufacturing within the county convenient to transportation facilities. The Commissioners' decision demonstrates a reasoned explanation after lengthy discussions and deliberation at several public hearings and meetings. We understand the basis for the County Commissioners' decision that Burleigh County needs large blocks of affordable industrial-zoned land near transportation facilities to promote economic development. Pahlke's property is 311 acres in a proposed industrial area and is adjacent to the interstate transportation system and within one mile of an interchange, which facilitates transportation and use of the planned industrial area for industrial purposes. The County Commissioners also imposed conditions on approval of the application, which provide limitations and controls for industrial development.

[¶ 18] We conclude there is substantial evidence supporting the County Commissioners' decision, and the Commissioners'

decision is the product of a rational mental process in which the Commissioners exercised their discretion under the precatory language of Burleigh County's comprehensive land use plan. Under our deferential standard of review, we do not act as a super board or relitigate the County Commissioners' decision. We conclude the County Commissioners' rezoning decision is not arbitrary, capricious, or unreasonable, and is supported by substantial evidence.

## V

[¶ 19] The Dockters also argue they are entitled to reasonable attorney fees and costs under N.D.C.C. § 11–11–39, which provides that a "district court may at its discretion award costs and reasonable attorney's fees to appellants when three or more aggrieved persons have joined in an appeal from a decision of the board of county commissioners and the court rules in favor of the appellants."

[¶ 20] Because we have not ruled in favor of the Dockters, they are not entitled to attorney fees and costs under N.D.C.C. § 11–11–39.

## VI

[¶ 21] We affirm the judgment.

[¶ 22] WILLIAM A. NEUMANN, S.J., DALE V. SANDSTROM, DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 23] The Honorable WILLIAM A. NEUMANN, S.J., sitting in place of KAPSNER, J., disqualified.