# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 81

Alton Johnson, 

Appellant

v.

City of Burlington,

Appellee

### No. 20190318

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Douglas L. Mattson, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Brian C. Balstad, Fargo, ND, for appellant.

Brian Schmidt (argued) and Scott K. Porsborg (on brief), Bismarck, ND, for appellee.

# Johnson v. City of Burlington
## No. 20190318

**McEvers, Justice.**

[¶1] Alton Johnson appeals from a judgment denying his variance application. Johnson argues the City's findings were arbitrary, capricious, unreasonable, and not supported by substantial evidence. We affirm the judgment.

I

[¶2] In the 1970s Johnson purchased land in Burlington, ND, and in 1973, opened an auto body shop. The auto body shop was zoned as a C-1 residential sometime after the shop was built. In 1989, a fire damaged the building. After building repairs in 1991, Johnson leased part of the property. Johnson began to use another location for his auto body business.

[¶3] In 2012, Johnson sold his business at the second location. Property owners neighboring the property raised concerns about the use of the property.

[¶4] In December 2012, a city council meeting was held, and neighbors of the property stated they had concerns about what would happen to the property after the current renters left the location. After the city council meeting, the City sent Johnson a letter in March 2013 stating "a body shop is not an allowed usage." In May 2013, the city attorney issued an opinion regarding the body shop, stating it "was a non-conforming use when the zoning ordinance was initially passed, so it was essentially 'grandfathered in'" and when the auto body shop's use was discontinued, and the current renters went into the building, the auto body shop was no longer "grandfathered in" and would need approval by the planning commission. Johnson operated the auto body shop at the location of the property at issue subsequent to the sale of the second location. In October 2013, Johnson moved for a temporary injunction and ex parte restraining order to allow him to continue to use his auto body shop, which was granted by the district court.

1

[¶5]   In October 2016, Johnson requested a variance from the City. A meeting of the City's planning commission was held on November 29, 2016. At the meeting, Johnson's counsel discussed the property and how Johnson was relying on the sale of the property for his retirement. Johnson testified about the type of work he would be doing and that auto body work had been done "off and on" at the Burlington location. One of the neighboring property owners testified and stated he was unaware of any auto body work that had been done at the property after Johnson opened the second location. Other members of the public also testified about their concerns with the property including the previous fire, concerns of another fire, and hazardous chemicals and fumes from painting. Commissioner Travis Grosche moved to recommend to the city council a denial of the variance application, stating:

> I think if you want to go through with this, I think you need to go through the steps and get rezoning for the purpose you're going to use if for. You're going to have to have the fire department involved with fire suppression. If you're going to do any painting, you're going to have to have paint booth with air recovery system, explosion proof lights, explosion proof operators. I think that's the way to go. You know if you were in Minot, you'd have to do that. That's just the way it is. You gotta follow the rules.

The planning commission voted to recommend that the city council deny the variance.

[¶6]   The city council met on December 5, 2016. Again, members of the public testified regarding the history of the property, concerns about the future owners of the property once Johnson retires, uncertainties about inspecting the property, hazardous chemicals and fumes, and potential fire hazards. The city council unanimously accepted the recommendation of the planning commission and denied the variance. The City's findings included Johnson's variance application was not in accordance with the City's ordinances and his application would have an adverse impact on neighboring properties.

[¶7]   In January 2017, Johnson appealed the City's decision to the district court. In August 2019, the court issued its findings of fact, conclusions of law, and order for judgment affirming the denial of Johnson's variance application.

2

Johnson appeals to this Court, arguing the City's findings were arbitrary, capricious, unreasonable, and not supported by substantial evidence.

## II

[¶8]    Johnson appealed the City's determination under N.D.C.C. § 28-34-01, which provides the procedure for appeals from local governing bodies.  Both Johnson and the City agree this Court's scope of review is very limited.

[¶9]    "When considering an appeal from the decision of a local governing body under N.D.C.C. § 28-34-01, our scope of review is the same as the district court's and is very limited." *Hagerott v. Morton Cty. Bd. of Comm'rs*, 2010 ND 32, ¶ 7, 778 N.W.2d 813.  This Court does not give any special deference to the district court and the decision of the governing body must be affirmed unless the body acted arbitrarily, capriciously, or unreasonably, or there is not substantial evidence supporting the decision.  *Tibert v. City of Minto*, 2006 ND 189, ¶ 8, 720 N.W.2d 921.  This Court does not substitute its judgment for that of the local governing body.  *Dockter v. Burleigh Cty. Bd. of Cty. Comm'rs*, 2015 ND 183, ¶ 8, 865 N.W.2d 836.  There is substantial evidence if a reasonable mind could accept the evidence as adequate to support the conclusion.  *Id.*  "[A] reconsideration of evidence is limited to the extent that such evidence was presented to the county commission, and the evidence must be reviewed in light of the commission's decision to determine whether that decision was arbitrary, capricious, or unreasonable."  *Id.*  "A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation."  *Tibert*, at ¶ 8.  "We fully review the interpretation of an ordinance, and a governing body's failure to correctly interpret and apply controlling law constitutes arbitrary, capricious, and unreasonable conduct."  *Hagerott*, at ¶ 7; *see Gullickson v. Stark Cty. Bd. of Cty. Comm'rs*, 474 N.W.2d 890 (N.D. 1991).

## III

[¶10] Johnson argues the City's findings were arbitrary, capricious, unreasonable, and not supported by substantial evidence.

## A

[¶11] Johnson argues the City's findings were made more than two years after the hearings were held and the composition of the planning commission and the city council changed between the time of the public hearing and the written findings. Johnson also argues the City's findings cite sections of the zoning ordinances not discussed at the public hearings. Johnson argues this renders the findings arbitrary, capricious, and unreasonable. The City argues the written findings were permitted additions to the record by the district court and were to summarize the hearings to comply with N.D.C.C. § 40-47-04. The City brought a motion in the district court to add the written findings to complete the record, which was granted.

[¶12] We have previously noted, "[u]nder N.D.C.C. § 28-34-01(2), the 'court may permit amendments or additions to the record to complete the record.'" *Gowan v. Ward Cty. Comm'n*, 2009 ND 72, ¶ 10, 764 N.W.2d 425. Even though the written findings were made at a later time, the written findings summarize the hearings. Regardless of whether each ordinance was specifically discussed, the ordinances cited in the findings relate to the issues involved at the hearings. Johnson has not adequately explained how citing to the ordinances regarding the issues before the respective city bodies makes the findings arbitrary, capricious, or unreasonable. Johnson's argument is without merit.

## B

[¶13] Johnson argues the City failed to correctly interpret and apply controlling law.

[¶14] First, Johnson argues the City failed to correctly apply N.D.C.C. § 40-47-09. Section 40-47-09, N.D.C.C., allows for an appeal process from a person aggrieved by an action by a city officer to a board of adjustment. However, the governing body of a city is not required to provide for a board of adjustment.

4

N.D.C.C. § 40-47-01 (stating regulations may provide that a board of adjustment may determine and vary the application of regulations). Johnson's argument is without merit, because the City has not created a board of adjustment and no appeal to a board of adjustment was utilized in this matter.

[¶15] Johnson also argues generally that the City failed to correctly apply the city ordinances. A city must issue written findings which must state the grounds upon which a request for a variance is approved or disapproved. N.D.C.C. § 40-47-04(3). The City issued written findings regarding Johnson's variance application. The findings indicate, and for purposes of this appeal, the parties agree, the auto body shop is in a C-1 zoned neighborhood. Section 18-1202 of the City of Burlington's Zoning Ordinance discusses permissible uses of land in a C-1 zone:

> (1) Any use permitted in the "R-3" General Residence District.
> (2) Automobile parking area or lot.
> (3) Clinic.
> (4) Filling station.
> (5) Florist shop or greenhouse.
> (6) Laundromat.
> (7) Offices and office building.
> (8) Retail store, provided that in connection with such store, there shall be no slaughtering of animals or poultry on the premises.
> (9) Tailoring, dressmaking, shoe repairing, repair of household appliances and bicycles, catering, dry cleaning, and pressing, and bakery with sale of bakery products on the premises, and other uses of similar character.
> (10) Personal service uses including barbershops, banks, beauty parlors, photographic or artist studios, messengers, taxicab, newspaper or telegraphic service stations, restaurants, and other personal service uses of a similar character.
> (11) Accessory building and use.

[¶16] An auto body shop is not a permissible use under the C-1 zoning ordinance of Burlington and was a nonconforming use that the City grandfathered in when the zoning ordinance was passed.

[¶17] The City's findings also cite to ordinances regarding variances, including City of Burlington Zoning Ordinance Chapter 18, sections 18-2201, 18-2502, and Article XXVI. Section 18-2201, generally discusses the fees for requesting various applications, including variances from height, area, yard, parking or loading provisions. Section 18-2502, describes variances for tracts of land to be subdivided. Article XXVI, generally discusses flood protection, and provides for a variance necessary for flood protection and the conditions under which a variance may be granted. Under the City's ordinances, a variance may be issued for relief from flood protection requirements, relief from a strict application of the requirements for subdividing a tract of land, and relief from height, area, yard, parking, or loading provisions.

[¶18] The City's findings state that Johnson's variance request is not addressed by the City's ordinances. We agree. The ordinances do not provide for a variance for Johnson's situation.

[¶19] In addition, the findings state: "Further, owners of neighboring properties have stated opposition to the request citing concerns with safety and nuisances. It appears Johnson's application may have adverse impacts on neighboring properties and it is not in the best interests of the community to allow him to operate an auto body and repair shop in a 'C-1' district."

[¶20] In *Gullickson,* we stated:

A variance "is invoked to avoid the confiscatory effect that would follow a literal enforcement of some term of a zoning ordinance operating to deprive an owner of all beneficial use of his land." 3 E. Yokley, *Zoning Law and Practice* § 21-2 (4th ed. 1979). A variance is intended to waive the strict letter of the zoning ordinance while preserving its spirit and purpose. *Id.* A failure to establish a prerequisite to a variance is fatal. *Id.* " The burden of proof is on the applicant to establish that his land is uniquely affected resulting in unnecessary hardship." *Id.* at § 21-6. It is widely recognized that one important requirement for a variance is "that the hardship must come from circumstances unique to a particular lot, or perhaps a few, and at any rate not from circumstances general in the neighborhood." 5 *Williams Am. Land Plan.* § 142.01 (1985 Rev). "[T]he unnecessary hardship which will

6

suffice for the granting of a variance must relate to the land rather than to the owner himself." 82 Am.Jur.2d, *Zoning and Planning* § 275 (1976). These general rules relate the limited role of a variance in administration of an ordinance that regulates zoning.

Zoning ordinances usually contain well-defined standards for granting a variance. "A variance is proper only if there is 1. no adverse effect on public, 2. no adverse effect on neighbors, *and* 3. the property has characteristics making it eligible for a variance. All standards must be met." D. Hagman, *Urban Plan. & Land Dev. Control Law* § 106 (1971). "Even though there is no adverse effect on the public, or even if the public is benefited, neighboring property may be adversely affected by a variance. If so, the variance should not be issued." *Id.* at § 108. A variance should not confer special privileges that are not enjoyed by neighboring property. *Id.* "The terms unique, special, exceptional and extraordinary and the like suggest that a variance is proper only where the property is somehow different from other property, particularly adjacent property. Legislative changes are the appropriate vehicle for a change which would affect a large number of properties." *Id.* at § 109. "If a parcel is not unique but is disadvantaged by a zoning restriction equally with other property in the area, issuance of a variance is improper." *Id.*

474 N.W.2d at 892. This Court's review is very limited and evidence is reviewed in light of the city commission's decision. Even if the ordinances could have provided relief, the City's decision to deny the variance are supported by the record. The City considered the concerns about possible adverse effects to neighboring property owners. The City considered Johnson's variance application and noted that it did not appear his application fell under the City's ordinances. There were concerns brought to the City about safety, particularly in regard to fire and toxic fumes. "A decision is not arbitrary, capricious, or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation." *Tibert*, 2006 ND 189, ¶ 8, 720 N.W.2d 921. The City's decision was rational in light of the facts and law before it. It was not arbitrary, capricious, or unreasonable for the City to deny Johnson's variance application and there is substantial evidence to support the City's decision.

7

[¶21] Johnson also argues that because the property has been continuously used as an auto body shop since 1973, the City should be estopped from denying Johnson's variance application.

[¶22] Estoppel based on a party's declaration, act, or omission, is allowed under N.D.C.C. § 31-11-06, which provides: "[w]hen a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission." While the doctrine of equitable estoppel is not absolutely barred against the government, it should also not be freely applied against the government. *Blocker Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912, 920 (N.D. 1984). "Estoppel is ordinarily a question of fact." *Nelson v. Johnson*, 2010 ND 23, ¶ 30, 778 N.W.2d 773.

[¶23] The City made no finding of fact whether Johnson continuously used the property as an auto body repair shop, but did note Johnson stated it was used "off and on." The City also did not make any findings on the issue of equitable estoppel. Johnson made no request for amendments to the record.

[¶24] The cases relied on by Johnson under his estoppel theory involve claims against various local government bodies for damages or a declaration of rights. *See Buegel v. City of Grand Forks,* 475 N.W.2d 133 (N.D. 1991) (property owner sued the city for inverse condemnation and to enjoin city from enforcing an amendment to an ordinance); *Minch v. City of* Fargo, 297 N.W.2d 785 (N.D. 1980) (property owner sued the city for damage for alleged taking caused by rezoning); *City of Fargo v. Harwood Twp.*, 256 N.W.2d 694 (N.D. 1977) (city commenced a declaratory judgment action to determine whether the township's regulations applied to the property). These types of actions would allow a fact finder to determine whether the elements of estoppel have been met. Johnson has cited no authority, nor have we found any, applying the doctrine of equitable estoppel to an appeal of the government's denial of a variance.

[¶25] Given our limited scope of review, we are only reviewing and interpreting the ordinances and the City's interpretations of the ordinances. We decline to apply the doctrine of equitable estoppel here because we are not convinced it is within our limited scope of review.

IV

[¶26] We have considered the remaining issues and arguments raised by Johnson and determine they are either unnecessary to our decision or are without merit.

[¶27] We affirm the judgment.

[¶28] Lisa Fair McEvers
     Gerald W. VandeWalle
     Jon J. Jensen, C.J.
     Daniel J. Crothers
     Jerod E. Tufte